1

2

3

4

5

6

7 # UNITED STATES DISTRICT COURT

8 ### EASTERN DISTRICT OF CALIFORNIA

9

10 RAUL ORTEGA,

        Case No. 1:19-cv-00259-SKO

        Plaintiff,

11

12     v.

        ORDER ON PLAINTIFF'S SOCIAL

        SECURITY COMPLAINT

13 ANDREW SAUL,

Commissioner of Social Security,

14         Defendant.

        (Doc. 1)

15

16

17 _____/

18

19 ## I.   INTRODUCTION

20       On February 22, 2019, Plaintiff Raul Ortega ("Plaintiff") filed a complaint under

21 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social

22 Security (the "Commissioner" or "Defendant") denying his application for disability insurance

23 benefits ("DIB") under Title II of the Social Security Act (the "Act") and supplemental security

24 income ("SSI").   The matter is currently before the Court on the parties' briefs, which were

25 submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate

26 Judge.[1]

27

28 _____

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 6, 8.)

## II.     FACTUAL BACKGROUND

On February 6, 2015, Plaintiff protectively filed an application for DIB and SSI payments, alleging he became disabled on January 2, 2012 due to seizures, high blood pressure, diabetes, and high cholesterol. (Administrative Record ("AR") 244, 246, 265.) Plaintiff was born on October 15, 1970 and was 42 years old as of the alleged onset date. (AR 261.) Plaintiff has a high school education, has past work in maintenance and sanitation, and last worked full-time in approximately 2008. (*See* AR 54, 266.)

### A.     Summary of Relevant Medical Evidence

#### 1.     Michael L. Leoni, M.D.

On February 11, 2015, Plaintiff presented to family care physician Michael Leoni for treatment of diabetes, hyperlipidemia, hypertension, and seizure disorder. (AR 810.) Dr. Leoni noted Plaintiff was prescribed Depakote, Keppra, and lamotrigine. (AR 811.) Dr. Leoni diagnosed Plaintiff with diabetes, hypertension and epilepsy, prescribed Plaintiff metformin, and advised Plaintiff to see a neurologist as soon as possible. (AR 813–14.) On February 25, 2015, Dr. Leoni noted that Plaintiff was continuing to take Keppra for his seizures, and that Plaintiff reported his seizures usually last about 20 minutes and "he loses his sense of awareness and is speaking without making sense[.]" (AR 805.) On March 11, 2015, Dr. Leoni noted that Plaintiff's seizures had continued despite treatment from a neurologist and compliance with medications. (AR 800.) On July 15, 2015, Dr. Leoni stated that Plaintiff was "considering going on disability" due to his seizures and his back pain, which resulted from multiple car accidents. (*See* AR 787.)

On July 20, 2015, Plaintiff followed up with Dr. Leoni following a July 16, 2015 imaging that showed arthrosis at L4-5 and L5-S1. (AR 782, 829.) Dr. Leoni referred Plaintiff for physical therapy after reviewing the imaging. (AR 785.) On August 25, 2015, Dr. Leoni noted that Plaintiff had chronic back pain with a recent increase in symptoms. (AR 939.) Plaintiff reported significant pain and continuing frequent seizures. (AR 939.) On May 23, 2016, Dr. Leoni refilled Plaintiff's prescriptions. (AR 959.) On August 1, 2016, Dr. Leoni noted that Plaintiff continued to complain of seizures. (AR 961.)

On November 1, 2016, Dr. Leoni submitted a medical source statement on Plaintiff's behalf. (AR 935–38.)  Dr. Leoni stated that Plaintiff has nonconvulsive seizures 3-4 times per week that cause unconsciousness and occur without warning.  (AR 935.)  Dr. Leoni stated that when Plaintiff has a seizure, he "starts to talk without conscious awareness, or gets up and goes somewhere else . . . not knowing what he is doing[.]"  (AR 935.)  Dr. Leoni further stated that Plaintiff's seizures cause loss of bladder control, exhaustion, and severe headaches, and Plaintiff needs to rest for at least one hour after having a seizure.  (AR 936.)  Dr. Leoni opined that Plaintiff was incapable of even "low stress" work due to his seizures because stress and exertion precipitate Plaintiff's seizures. (AR 936.)  Dr Leoni opined that Plaintiff could sit for 6 hours per day and stand/walk for less than 2 hours per day; could frequently lift/carry less than 10 pounds, occasionally lift/carry 10-20 pounds, and never lift/carry 50 pounds; and would need to take a break every hour for 15-20 minutes due to back pain.  (AR 937–38.)

**2.      Rohini J. Joshi, M.D.**

On July 30, 2014, Plaintiff presented to neurologist Rohini Joshi for a consultation.  (AR 662.)  Plaintiff reported seizures 2-3 times per month, and Dr. Joshi diagnosed Plaintiff with convulsive generalized seizure disorder.  (AR 662–64.)  Dr. Joshi continued Plaintiff on his medications including Depakote and lamotrigine.  (AR 664.)  On July 31, 2015, Dr. Joshi noted that Plaintiff complained of two seizures the previous week involving convulsions and lasting 40 minutes each.  (AR 838.)  On August 7, 2015, Plaintiff again reported seizures the previous week.  (AR 852.) On October 8, 2015, Plaintiff reported a seizure and Dr. Joshi diagnosed Plaintiff with epilepsy. (AR 867.)  On August 17, 2016, Dr. Joshi noted that Plaintiff continued to have about 4 seizures per week.  (AR 888.)

**3.      Richard Pantera, M.D.**

On June 25, 2014, neurologist Richard Pantera conducted an electroencephalography (EEG) study on Plaintiff.  (AR 534.)  Dr. Pantera stated that Plaintiff's EEG results were "highly abnormal . . . due to generalized spike wave activity."  (AR 534.)  Dr. Pantera stated that Plaintiff should continue to take Depakote as treatment for his seizure disorder.  (AR 534.)

1        **4.    State Agency Physicians**

2        On September 9, 2014, K. Mohan, M.D., a Disability Determinations Service medical

3   consultant, assessed Plaintiff's physical residual functional capacity (RFC).[2]  (AR 87–88.)  Dr.

4   Mohan determined that Plaintiff had the following limitations: he could occasionally climb

5   ramps/stairs and balance, never climb ladders/ropes/scaffolds, and should avoid exposure to

6   machinery and heights.  (AR 87–88.)  Upon reconsideration, on August 13, 2015, another Disability

7   Determinations Service medical consultant, A. Nasrabedi, M.D., affirmed Dr. Mohan's findings.

8   (AR 133–34.)

9   **B.    Administrative Proceedings**

10       The Commissioner denied Plaintiff's application for benefits initially on May 21, 2015,

11  and again on reconsideration on August 13, 2016.  (AR 163–68, 177–82.)  On October 7, 2015,

12  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 187–88.)

13       On August 17, 2017, Plaintiff appeared with counsel and testified before an ALJ as to his

14  alleged disabling conditions.  (AR 41–80.)  Plaintiff testified that he was involved in a car accident

15  in approximately 2007, which caused him to have back issues and he could not drive, so he was

16  fired from his job.  (AR 54.)  After that job, Plaintiff stated he only worked occasionally in

17  temporary positions.  (AR 55.)  Plaintiff stated he does not do any household chores and his sister

18  comes over to do the cooking and cleaning.  (AR 56.)  Plaintiff stated he periodically gets seizures

19  and that he gets severe seizures where he blacks out approximately twice a month.  (AR 59.)

20  Plaintiff testified he is prescribed Depakote, Keppra, and Lamitol for his seizures.  (AR 62.)

21  Plaintiff stated his diabetes is "under control" but he also takes Metformin for the diabetes.  (AR

22  68.)

23       A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as an

24

---

25  [2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES

26  II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that

27  result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay

28  evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

industrial cleaner, Dictionary of Occupational Titles (DOT) code 381.687-018, which was medium work with a specific vocational preparation (SVP)[3] of 2; and a laborer, DOT code 732.687-050, which was medium work with a SVP of 2. (AR 74.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and with his work background. (AR 74.) The VE was also to assume this person could perform at all exertional levels, perform occasional climbing of ladders, ropes, and scaffolds, and can do work not performed at heights and that does not involve operating machinery or motor vehicles. (AR 74.) The VE testified that such a person could perform Plaintiff's past relevant work as a laborer. (AR 74.)

In a second hypothetical, the ALJ asked the VE to consider an individual with the limitations described in the first hypothetical except that the person could do work that is not performed at production pace. (AR 74.) The VE testified that such a person could only perform Plaintiff's past work as a laborer. (AR 74.) In a third hypothetical, the ALJ asked the VE to consider an individual that can lift and carry 10 pounds frequently and 20 pounds occasionally, stand/walk/sit six hours a day, frequently stoop, occasionally climb ladders, ropes and scaffolds, can do work not performed at heights and that does not involve operating machinery or motor vehicles, and can do work that is not performed at a production pace and that involves occasional stairs and ramps and occasional balancing. (AR 75.) The VE testified that the person could not perform Plaintiff's past relevant work but could perform jobs as a cashier, DOT code 211.462-010, which is light work with a SVP of 2 and 935,000 jobs; information clerk, DOT code 237.367-018, which is light work with a SVP of 2 and 89,000 jobs; and office helper, DOT code 239.567-010, which is light work with a SVP of 2 and 91,000 jobs. (AR 75.) In a fourth hypothetical, the ALJ asked the VE to consider an individual that can lift or carry 10 pounds frequently and 20 pounds occasionally, stand/walk/sit two hours per day, frequently stoop, do work not performed at a production pace, occasionally climb stairs and ramps and balance, and cannot perform work at heights or work involving operating machinery or motor vehicles. (AR 75–76.) The VE testified the person could not perform any work. (AR 76.)

---

[3] Specific vocational preparation (SVP), as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

**C.      The ALJ's Decision**

In a decision dated March 2, 2018, the ALJ found that Plaintiff was not disabled, as defined by the Act.  (AR 21–34.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520.  (AR 23–34.)  The ALJ decided that Plaintiff had not engaged in substantial gainful activity since May 11, 2014, the alleged onset date (step one).  (AR 23.)  At step two, the ALJ found that Plaintiff had the following severe impairments: seizure disorder, degenerative disc disease of the lumbar spine, and obesity.  (AR 23.)  The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings (step three).  (AR 24.)

The ALJ assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity … We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff retained the RFC:

> to perform work as follows: lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently, stand and/or walk 6 out of an 8-hour workday; sit 8 hours in an 8-hour day; and frequently stoop.  He can do work that is not performed at heights, that is without operating machinery or motor vehicles, and that is not performed at production pace.

(AR 26.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record[.]"  (AR 27.)  At step five, the ALJ found that Plaintiff could not perform past relevant work, but there were other jobs existing in significant numbers in the national economy Plaintiff could perform.  (AR 32–33.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on December 19, 2018.  (AR 7–12.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 404.981.

### III.      LEGAL STANDARD

**A.      Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps."  *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of

the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.      Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review …" *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 (citations omitted) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*,

533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.        DISCUSSION

Plaintiff contends that the ALJ erred in her step three determination and erred in her evaluation of Dr. Leoni's opinion.  (*See* Doc. 14 at 10–16.)  The Commissioner responds that the ALJ properly conducted the step three analysis and properly discounted Dr. Leoni's opinion.  (Doc. 17 at 10–18.)  For the reasons stated below, the Court agrees with Plaintiff that the ALJ erred in her evaluation of Dr. Leoni's opinion, and that error was not harmless.

**A.        The ALJ Erred in Her Evaluation of Dr. Leoni's Opinion.**

**1.        Legal Standard**

The ALJ must consider and evaluate every medical opinion of record.  *See* 20 C.F.R. § 404.1527(b) and (c) (applying to claims filed before March 27, 2017); *Mora v. Berryhill*, No. 1:16–cv–01279–SKO, 2018 WL 636923, at *10 (E.D. Cal. Jan. 31, 2018).  In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason."  *Mora*, 2018 WL 636923, at *10.

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physician); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physician).  *Fatheree v. Colvin*, No. 1:13–cv–01577–SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)).  The opinions of treating physicians

"are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.   An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).   In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830–31.   "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).   While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.   *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 751). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001),[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.  *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.  The opinion of a non-

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional.  *Lester*, 81 F.3d at 831.

**2.     Analysis**

The record reflects that Dr. Leoni was Plaintiff's treating physician.  "If . . . a treating [physician's] opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record, [the Commissioner] will give it controlling weight."  20 C.F.R. § 404.1527(c)(2); *cf. Reddick*, 157 F.3d at 725 ("Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record." (citation omitted)).  "If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'"  *Orn*, 495 F.3d at 632 (quoting 20 C.F.R. § 404.1527(d)(2)).

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [Commissioner] considers specified factors in determining the weight it will be given."  *Id.* at 631.  These factors include (1) the "[l]ength of the treatment relationship and the frequency of examination;" (2) the "[n]ature and extent of the treatment relationship;" (3) the "[s]upportability" of the opinion;" (4) the "[c]onsistency" of the opinion "with the record as a whole;" (5) whether the opinion is from "a specialist about medical issues related to his or her area of specialty;" and (6) "any other factors [the claimant] or others bring to [the ALJ's] attention, or of which [the ALJ is] aware, which tend to support or contradict the opinion."  20 C.F.R. § 404.1527(c)(2)–(6).

Further, "[e]ven if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record."  *Reddick*, 157 F.3d at 725 (quoting *Lester*, 81 F.3d at 830).  *See also Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making

findings." *Id.* (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)); *see, e.g.*, *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009))); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995))); *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (noting that "inconsistencies and ambiguities" in a treating physician's opinion "represent specific and legitimate reasons for" rejecting the opinion). "The ALJ must do more than offer his conclusions." *Reddick*, 157 F.3d at 725. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

Dr. Leoni treated Plaintiff from approximately February 2015 to November 2016. (*See* AR 810, 938.) As stated above, on November 1, 2016, Dr. Leoni submitted a medical source statement on behalf of Plaintiff in which he opined to significant limitations, including that Plaintiff would need to take a 15-20 minute break once every hour due to back pain and that Plaintiff would need to rest for one hour after each seizure, which occur 3-4 times per week. (*See* AR 935–38.)

In weighing Dr. Leoni's opinion, the ALJ stated:

> The opinion of Dr. Leoni is given little weight, as it is overly restrictive in limiting [Plaintiff] to standing and walking less than two hours and needing a break every 15 minutes. [Plaintiff's] orthopedic imaging and course of treatment does not support such medical restrictions, nor does it support the postural limitations opined. While [Plaintiff] testified that his seizure is triggered by stress, the [RFC] has accounted for such by restricting production pace work, among other limitations. While Dr. Joshi treated [Plaintiff's] seizures . . . Dr. Leoni appears to have based her [sic] opinion on [Plaintiff's] subjective complaints.

(AR 32.) In sum, the ALJ discounted Dr. Leoni's opinion because it was inconsistent with the objective medical evidence and because Dr. Leoni allegedly did not treat Plaintiff for his seizures. (AR 32.)

Because Dr. Leoni's opinion was contradicted by the opinions of the state agency physicians, (*compare* AR 935–38 *with* AR 87–88, 133–34), the ALJ was required to articulate "specific and legitimate" reasons, supported by substantial evidence, for rejecting Dr. Leoni's opinion. *Trevizo*, 871 F.3d at 675 (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830.

The Court finds that the ALJ failed to offer "specific and legitimate" reasons for rejecting Dr. Leoni's opinion.

### a.    Objective Medical Evidence

The ALJ's first offered reason for rejecting Dr. Leoni's opinion—alleged inconsistency with the medical evidence—is insufficient.  An ALJ may properly discount a treating physician's opinion that is inconsistent with the medical record, including his own treatment notes.  *See Valentine*, 574 F.3d at 692–93.  However, an ALJ may not consider only evidence that supports a non-disability determination and disregard evidence that supports a finding of disability.  *See, e.g., Holohan*, 246 F.3d at 1207.  Further, an ALJ must be specific regarding which parts of the record undermine the physician's opinion, because without that specification, the Court is left to speculate as to how the ALJ found the opinion is undermined by the evidence, which the Court may not do.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494–95 (9th Cir. 2015) ("[W]e cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.").

Here, the ALJ states simply that "[Plaintiff's] orthopedic imaging and course of treatment does not support such . . . restrictions[.]"  (AR 32.)  This is insufficient.  As stated above, the ALJ must specify what aspects of the medical record contradict Dr. Leoni's opinion and why.  *See Brown-Hunter*, 806 F.3d at 495.  The record also reflects that Plaintiff has been treated with heavy medication for his seizures for many years, and that the seizures consistently continued despite the medication.  (*See, e.g.,* AR 838.)  Thus, it is unclear why the ALJ found that Dr. Leoni's opined restrictions are not supported by Plaintiff's treatment record.

**b.    Dr. Leoni's Alleged Lack of Treatment of Plaintiff for Seizures**

The other reason given by the ALJ—that Dr. Leoni did not treat Plaintiff for his seizures—is simply incorrect and thus unsupported by substantial evidence.  The record reflects that Dr. Leoni treated Plaintiff for his seizures by prescribing medications and evaluating Plaintiff's seizures on many occasions.  (*See, e.g.,* AR 813–14.)  The fact that Plaintiff also saw a specialist for his seizures does not negate the fact that Dr. Leoni also treated him for his seizures and, contrary to the Commissioner's assertion, based his medical opinion on his clinical observations of Plaintiff.  (*See* AR 935–38.)  Thus, the Court finds that the ALJ failed to offer sufficiently "specific and legitimate" reasons to discount Dr. Leoni's opinion.

**B.    The ALJ's Error Was Not Harmless**

The Court now turns to the analysis of whether this error by the ALJ was harmless.  The Ninth Circuit "ha[s] long recognized that harmless error principles apply in the Social Security Act context."  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 932 n.10 (9th Cir. 2014) (stating that the harmless error analysis applies where the ALJ errs by not discharging their duty to develop the record).  As such, "the court will not reverse an ALJ's decision for harmless error."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citing *Robbins*, 466 F.3d at 885).

An error is harmless "where it is inconsequential to the ultimate nondisability determination."  *Molina*, 674 F.3d at 1115 (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that an error is also harmless "'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity'" (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)).  "In other words, in each case [courts] look at the record as a whole to determine whether the error alters the outcome of the case."  *Molina*, 674 F.3d at 1115.  "[T]he nature of [the] application" of the "harmless error analysis to social security cases" is "fact-intensive—'no presumptions operate' and

'[courts] must analyze harmlessness in light of the circumstances of the case.'" *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1121). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki*, 556 U.S. at 409 (citations omitted).

Here, the Commissioner does not contend that any error by the ALJ in evaluating Dr. Leoni's opinion was harmless, and the record establishes that the ALJ's error was not harmless. If the ALJ had properly evaluated Dr. Leoni's opinion and included any of the significant limitations that Dr. Leoni opined, that may have changed the disability determination. Thus, the error was not "inconsequential to the ultimate nondisability determination," *see Molina*, 674 F.3d at 1115, and was not harmless.

**C.     The ALJ's Error Warrants Remand for Further Proceedings**

The Commissioner requests that if the ALJ's decision is reversed, the Court remand the case to the Commissioner for further proceedings, as opposed to awarding benefits, and Plaintiff does not request that the Court direct an award of benefits based on the opinion of Dr. Leoni alone. (*See* Doc. 17 at 18.)

Where the ALJ commits an error and that error is not harmless, the "ordinary … rule" is "to remand to the agency for additional investigation or explanation." *Treichler*, 775 F.3d at 1099 (citations omitted). The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100–01 (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule"). In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted). As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been

fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations omitted). Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

Here, the Court finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable because additional administrative proceedings would be useful. If the ALJ changes the evaluation of Dr. Leoni's opinion and credits all or some of the opinion, the ALJ should incorporate any warranted additional limitations in the RFC. Conversely, there may be specific and legitimate reasons the ALJ can offer for discounting the opinion. *See, e.g., Vaughn v. Berryhill*, 242 F. Supp. 3d 998, 1010 (E.D. Cal. Mar. 17, 2017) (remanding case for further proceedings where the ALJ erred in her evaluation of the medical opinions of plaintiff's treating physicians, "for the ALJ to properly consider and discuss the treating physicians' opinions," direct any "further medical evaluation . . . necessary," and re-formulate plaintiff's RFC). *Cf. Voisard v. Berryhill*, No. 2:17-CV-1023-EFB, 2018 WL 4488474, at *5 (E.D. Cal. Sept. 19, 2018) ("That the ALJ failed to provide sufficient reasons for discounting plaintiff's subjective testimony in this instance does not compel a finding that he is unable to do so.").

Even if the ALJ decides to credit as true some or all of Dr. Leoni's opinion and adjust her RFC determination, the ALJ may still conclude that Plaintiff is not disabled. The ALJ may also elect to further develop the record, if deemed necessary. Further proceedings would therefore be useful to allow the ALJ to resolve this "outstanding issue[]" before a proper disability determination can be made. *See Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988). On remand, the ALJ should reevaluate the opinion of Dr. Leoni, reevaluate her step three determination, and address any necessary changes to the RFC determination. The ALJ must also reevaluate her conclusions at Steps Four and Five of the disability determination in light of any changes to Plaintiff's RFC.

Based on the foregoing, the Court will remand this case for further proceedings.

**D.     The Court Declines to Determine Plaintiff's Remaining Assertions of Error**

As the Court finds that remand is appropriate for the ALJ to reconsider Dr. Leoni's opinion, the Court does not determine Plaintiff's additional assertion of error regarding the ALJ's step three determination.  (*See* Doc. 14 at 10–12); *cf. Newton v. Colvin*, No. 2:13-cv-2458-GEB-EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments"); *Willmett ex rel. A.P. v. Astrue*, No. 2:10-cv-01201 KJN, 2011 WL 3816284, at *1 (E.D. Cal. Aug. 25, 2011) ("Because this legal error warrants remanding this matter for further proceedings, the undersigned does not reach the remainder of [the] plaintiff's arguments seeking reversal of the ALJ's and Appeals Council's decisions.").

## V.     CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Raul Ortega and against Defendant Andrew Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   __**August 21, 2020**__                     _____/s/ *Sheila K. Oberto*_____

                                        UNITED STATES MAGISTRATE JUDGE